UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Derick Ortiz,

      v.                                  Civil No. 19-cv-1025-JL
                                            Opinion No. 2020 DNH 036

Sig Sauer, Inc.

## **MEMORANDUM OPINION**

This is a putative class action concerning an alleged design defect in a popular semi-automatic pistol, the SIG P320. Defendant Sig Sauer, Inc., the manufacturer of the P320, has moved to dismiss plaintiff Derick Ortiz's individual and classwide claims on Article III (standing) and Rule 12(b) (sufficiency) grounds. Ortiz, an Arizona resident who purchased a civilian P320 in 2016, alleges that Sig Sauer failed to disclose a material defect with the P320's "drop safe" design that causes the pistol to fire when dropped on the ground (a "drop fire"). As such, he seeks to represent a nationwide class of purchasers to recover under federal and several state breach-of-warranty, fraud, and consumer protection laws.

After considering the parties' written and oral submissions, the court finds that Ortiz has adequately pled his standing to litigate this case and most of his legal claims. With respect to standing, Ortiz has sufficiently pled a legally protected economic injury by offering detailed factual allegations about the P320's drop-fire defect. Although Sig Sauer began offering free upgrades in 2017 to prevent older P320s from drop firing, Ortiz maintains that this upgrade would still not fully compensate him for the significantly diminished resale value of his pistol. Taken as true—which the court is obliged to do at this procedural posture—these allegations demonstrate the existence of a concrete, particularized, and actual injury in fact, which satisfies Article III's standing requirements for purposes of overcoming a Rule 12 motion to dismiss.

Additionally, Ortiz has adequately pled legal claims for relief based on a purported design defect for all but one of his causes of action. Sig Sauer—which bears the burden on its motion—failed to show that Ortiz's class definition and allegations are so overbroad and beyond tailoring as to preclude him from moving forward on a classwide basis for at least some of his claims. Moreover, Sig Sauer failed to show that its representations regarding the P320's safety were not enforceable warranties under federal and state warranty laws. As such, the court dismisses only Count 8 of the complaint—Ortiz's New Hampshire Consumer Protection Act ("NHCPA") claim—because Ortiz failed to plead that he received any misrepresentations or omissions within the State of New Hampshire, as required by the statute. The court therefore maintains its class action jurisdiction over this case under 28 U.S.C. § 1332(d).

## I. __Background__

The following draws from the complaint's non-conclusory allegations and the submitted documents referenced therein. See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019).

The SIG P320 is a popular, semiautomatic pistol manufactured by Sig Sauer, which features a striker firing mechanism as compared to a traditional hammer firer.[1] In 2016, the U.S. Army selected the P320 to replace the M9 service pistol as the standard-issue sidearm of U.S. military servicemembers. That same year, the U.S. Army discovered that the P320 can inadvertently discharge a round of ammunition if dropped on the ground.[2] The Army attributed this "deficiency" to a heavy trigger and sear.[3]

---

[1] Compl. (doc. no. 1) ¶ 1.

[2] Id. ¶¶ 1, 4.

[3] Id. ¶¶ 4, 19. "The sear is the part of the trigger mechanism that holds the hammer, striker, or bolt back until the correct amount of pressure has been applied to the trigger; at which point the hammer, striker, or bolt is released to discharge the weapon. In other words, the sear constitutes

Sig Sauer promptly fixed the military versions of the P320, but continued to manufacture the heavy-trigger-and-sear model for the civilian market.[4]  Despite representations by Sig Sauer's CEO that "[t]here have been zero reported drop-related P320 incidents,"[5] at least three law enforcement agents have been injured by civilian P320s that discharged unintentionally after being dropped.[6]  In late 2017, Sig Sauer updated the civilian P320 to include the lighter trigger and modified sear fixes.[7]  By that time, however, at least 500,000 "deficient" P320 pistols had entered civilian circulation.[8]

Derick Ortiz, an Arizona citizen and self-described "law-abiding citizen who believes that firearms should function properly and safely," purchased a civilian version of the P320 for about $500 in Arizona on or about September 30, 2016.  Ortiz alleges that prior to his purchase, he read on both the Sig Sauer website and in a Sig Sauer brochure that the P320 was "drop safe" and would not "fire unless you want it to."[9]  Ortiz further asserts that he relied on these representations and either would not have purchased his P320 or would have not paid as much for it had he known about the P320's drop-fire risks.[10]

---

the system of levers that connects the trigger to the firing mechanism (i.e., the 'striker' in a SIG P320, which is similar to a firing pin in a rifle)."  Compl. at 2 n.2.

[4] Id. ¶ 4.

[5] Id. ¶ 34.

[6] See id. ¶¶ 27-31.

[7] Id. ¶ 24.

[8] Id.

[9] Id. ¶ 8.

[10] Id.

On August 8, 2017, Sig Sauer announced a "voluntary upgrade" for the P320, explaining that "[a]s a result of input from law enforcement, government and military customers, SIG has developed a number of enhancements in function, reliability, and overall safety including drop performance."[11]  As part of the upgrade, Sig Sauer installs a lighter trigger and an improved sear on P320s sent to it to prevent accidental discharges.[12]  It also installs a disconnector safety to prevent out-of-battery discharges.

Ortiz maintains that the voluntary upgrade "is a mandatory safety repair for the P320 in disguise."[13]  Nevertheless, Sig Sauer allegedly never sent individual notices to registered owners of non-upgraded pistols, nor stated that the voluntary upgrade was intended to repair the drop fire deficiency.[14]  According to Ortiz, "the only information about the drop fire design defect first appeared around August 8, 2017, is buried in the Frequently Asked Questions ('FAQ') in [Sig Sauer]'s website, and itself fails to disclose material information."[15]  As such, he filed a putative class action complaint seeking recovery on behalf of civilian purchasers of the P320 from across the United States.

## II.     Applicable legal standard

### A.     Standing

"The Constitution limits the judicial power of the federal courts to actual cases and controversies."  Katz v. Pershing, LLC, 672 F.3d 64, 72 (1st Cir. 2012) (citing U.S. Const. Art. III, § 2, cl. 1).  "A case or controversy exists only when the party soliciting federal court

---

[11] Id. ¶ 37.

[12] Id. ¶ 40.

[13] Id. ¶ 37.

[14] Id. ¶¶ 39, 41-47.

[15] Id. ¶¶ 48-49.

jurisdiction (normally, the plaintiff) demonstrates 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends.'" Id. (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)).

"To satisfy the personal stake requirement, a plaintiff must establish each part of a familiar triad: injury, causation, and redressability." Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)); see also Massachusetts v. U.S. Dep't of Health & Human Servs., 923 F.3d 209, 221 (1st Cir. 2019) (explaining that the burden of alleging facts sufficient to prove these elements rests with the party invoking federal jurisdiction). "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof," which is, "with the manner and degree of evidence required at the successive stages of the litigation." Katz, 672 F.3d at 72 (quoting Lujan, 504 U.S. at 561) (internal quotation marks omitted).

In considering a pre-discovery dismissal for lack of standing, the court must "accept as true all well-ple[d] factual averments in the plaintiff's . . . complaint and indulge all reasonable inferences therefrom in [the plaintiff's] favor." Id. at 70. And while "generally the court may not consider materials outside the pleadings on a Rule 12(b)(6) motion," it may do so to determine jurisdiction. See Gonzales v. United States, 284 F.3d 281, 288 (1st Cir. 2002); Strahan v. Nielsen, 18-cv-161, 2018 WL 3966318, at *1 (D.N.H. Aug. 17, 2018).

**B. Sufficiency**

Rule 12(b)(6) imposes a similar standard to Rule 12(b)(1). See Katz, 672 F.3d at 71 (citing Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006)). To survive a motion to dismiss, the plaintiff need only provide a "short and plain statement . . . showing [entitlement] to relief." Fed. R. Civ. P. 8(a)(2). For claims sounding in fraud, the plaintiff must further "specify the who,

what, where, and when of the allegedly false or fraudulent representations or omissions" with particularity. Davis v. Gutierrez, No. 17-cv-147, 2018 WL 1514869, at *9 (D.N.H. Mar. 27, 2018); accord Ezell v. Lexington Ins. Co., 926 F.3d 48, 51 (1st Cir. 2019); see also Fed. R. Civ. P. 9(b).

The court makes determinations about the sufficiency of a complaint through a "holistic, context-specific analysis." Gilbert, 915 F.3d at 80. First, it "isolate[s] and ignore[s] statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Zenon v. Guzman, 924 F.3d 611, 615 (1st Cir. 2019) (citations and quotation marks omitted). It then "evaluate[s] whether the remaining factual content supports a 'reasonable inference that the defendant is liable for the misconduct alleged.'" In re Curran, 855 F.3d 19, 25 (1st Cir. 2017) (quoting Shay v. Walters, 702 F.3d 76, 82 (1st Cir. 2012)); see also Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006) ("The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits.").

In doing so, the court must accept "all well-pled facts in the complaint as true" and construe all reasonable inferences in the plaintiff's favor. See Gilbert, 915 F.3d at 80. In addition, the court may consider documents attached as exhibits or incorporated by refence in the complaint. See Trans–Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008). But the court "need not give weight to bare conclusions, unembellished by pertinent facts." Shay, 702 F.3d at 82-83. If the complaint's factual averments are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture," dismissal will be warranted. SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

### III. __Analysis__

Sig Sauer contends that the class action complaint should be dismissed for three reasons. First, it argues that Ortiz lacks standing to bring this action because he has not experienced the alleged drop-fire defect with his P320 pistol.

Second, it asserts that Ortiz's nationwide breach of warranty, unjust enrichment, and fraud claims are inappropriate for class treatment, and thus, should be stricken, because the proposed class definition is overbroad and because certain warranty- and fraud-based claims are not fit for class treatment. Finally, it contends that several of Ortiz' federal and state law claims fail as a matter of law. As discussed herein, the court finds that: (1) Ortiz has adequately pled his standing to recover damages for the P320's alleged defects; (2) questions regarding the propriety of Ortiz's class definition and nationwide claims would be better addressed at the class certification stage; and (3) with one exception—the New Hampshire Consumer Protection Act claim—Sig Sauer has failed to show that Ortiz's individual legal claims are insufficient as a matter of law.

### A. Standing

Sig Sauer first asserts that Ortiz lacks standing to bring his breach-of-warranty, fraud, and consumer-protection-based claims because he received the benefit of his bargain—a functioning pistol that has not manifested a drop-fire defect.[16] In its view: Ortiz has not alleged that "the defect manifested in his pistol or that such manifestation is inevitable;"[17] his allegations show only that a malfunction "could occur in the future."[18] As such, Sig Sauer maintains that Ortiz has

---

[16] Sig Sauer Mot. to Dismiss Mem. (doc. no. 6-1) at 8.

[17] Id.

[18] Id.

not suffered an injury in fact for purposes of establishing Article III standing.  The court disagrees.

The "[f]irst and foremost" concern in standing analysis is the requirement that the plaintiff establish an injury in fact, Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (alteration in original) (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103 (1998)), which "helps to ensure that the plaintiff has a 'personal stake in the outcome of the controversy,'" Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157 (2014) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)).  The plaintiff must show the "'invasion of a legally protected interest' that is both 'concrete and particularized' as well as 'actual or imminent.'" Gustavsen v. Alcon Labs., Inc., 903 F.3d 1, 7 (1st Cir. 2018) (quoting Lujan, 504 U.S. at 560).

Here, Ortiz alleged more than the fact that his P320 could drop fire at some indeterminable future date; he also alleged economic injury.  Ortiz claims he purchased a P320 which, like every P320, "already has a defective design."[19]  "Had [Ortiz] known that the P320 was in fact not drop safe" and could "fire even when you do not want it to," he allegedly would not have purchased his P320 or would not have paid as much for it.[20]

At a Rule 12(b)(6) procedural posture, this alleged economic injury clears each injury-in-fact hurdle:  Ortiz has a legally protected interest in how he spends his money or, more specifically, the resale value of goods he has spent money on.  Gustavsen, 903 F.3d at 7 ("Certainly plaintiffs have a legally protected interest in their money.").  His injury is particularized "because it constitutes undisputed harm to [him] specifically."  Id.  His injury, as alleged, is concrete, rather than a "bare procedural violation."  Spokeo, 136 S. Ct. at 1549; Gustavsen, 903 F.3d at 7 (explaining that economic loss "is the prototypical concrete harm").

---

[19] Ortiz Opp. to Mot. to Dismiss (doc. no. 12) at 4-5.

[20] Id.

Finally, his injury is "actual or imminent" because he has alleged that the harm—his overpayment for the P320 and diminished resale value—occurred when he purchased the handgun on the belief that it was drop safe. See Gustavsen, 903 F.3d at 7.

Sig Sauer attempts to counter Ortiz's standing allegations by arguing Ortiz's "diminished resale value" claim "is simply not plausible."[21] But in doing so, Sig Sauer misunderstands how this court must evaluate Ortiz's allegations at this procedural stage. In considering a pre-discovery grant of a motion to dismiss for lack of standing, the court must "accept as true all well-ple[d] factual averments in the plaintiff's . . . complaint and indulge[s] all reasonable inferences therefrom in his favor." Katz, 672 F.3d at 70. As such, the court must accept as true Ortiz's averment that Sig Sauer's Voluntary Upgrade Program "would not compensate him for the significantly diminished resale value of his SIG P320 resulting from the drop fire design defect,"[22] as well as the reasonable inference that perceived defects with the civilian P320 affected the market value of P320s made before 2018, even with the availability of a free upgrade.[23] See Gordon v. Sig Sauer, Inc., No. H-19-585, 2019 U.S. Dist. LEXIS 160584, at *22 (S.D. Tex. Sep. 20, 2019) (related case, finding that allegation that the drop-fire defect had decreased the plaintiff's P320's resale value, even with the availability of a voluntary and free upgrade, is sufficient to allege economic loss that could be redressed by a judgment ordering compensation); In re Toyota Motor Corp., 790 F. Supp. 2d 1152, 1166 (C.D. Cal. 2011) ("As long as [p]laintiffs do not simply allege that their [products] are 'defective,' but rather offer

---

[21] Sig Sauer Mot. to Dismiss Mem. at 2-3.

[22] Compl. ¶ 8.

[23] At oral argument, Ortiz provided a finer point for his allegation that the voluntary upgrade program did not adequately address the economic injury allegedly arising from the P320's reputational taint. While Ortiz's market harm allegations may suffice for surviving a Rule 12 motion, the court noted that evidence would be needed to survive summary judgment.

detailed, non-conclusory factual allegations of the product defect, the economic loss injury flows from the plausibly alleged defect at the pleadings stage.").[24]

In short, because Ortiz has adequately pled an economic injury stemming from a purportedly inherent design defect, he has sufficiently pled an injury in fact conferring Article III standing to litigate this case.

## B.     Class definition

Second, Sig Sauer asks the court to strike or dismiss Ortiz's proposed class definition, arguing that it is overbroad and cannot sustain nationwide claims under Fed. R. Civ. P. 23.  These arguments may have a measure of merit, but they are premature at the pleading stage.

The dispositive issue for a motion to dismiss for failure to state a claim is whether the plaintiff has pled "the existence of a group of putative class members whose claims are susceptible of resolution on a classwide basis." Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 59 (1st Cir. 2013).  As Sig Sauer correctly notes, "[d]istrict courts need not wait until class certification briefing to dismiss class allegations that, from the face of the complaint, are improper for class treatment."[25]  "If it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis, district courts [may] use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations." Manning, 725 F.3d at 59 (citing Pilgrim v. Universal Health Card, LLC, 660 F.3d 943, 949 (6th Cir. 2011)).

Nevertheless, the First Circuit Court of Appeals has cautioned the district courts against striking class action allegations until after the development of a factual record for two reasons:

First, while ruling on a motion to strike is committed to the district court's sound judgment, "such motions are narrow in scope, disfavored in practice, and not

---

[24] Again, this alleged defect stems not from how the P320 functions, but on the inherently defective design of the P320.  See Toyota, 790 F. Supp. 2d at 1166 n. 11.

[25] Sig Sauer Mot. to Dismiss Mem. at 13 (citing Manning).

calculated readily to invoke the court's discretion." This is so because "striking a portion of a pleading is a drastic remedy and . . . it is often sought by the movant simply as a dilatory or harassing tactic."

[]

Second, courts have repeatedly emphasized that striking class allegations under Rule 12(f) is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.

Id. (internal citations omitted).

Despite Sig Sauer's arguments to the contrary, it is not obvious from the pleadings that Ortiz's class definition is so overbroad and beyond tailoring as to preclude him from moving forward on a classwide basis for at least some of his claims. "[A]t present, the class definition set forth in the amended complaint is 'a proposal – and not by any means a certainty.' To the extent there are particular defects, they can be addressed on a motion to certify, when the court has the discretion to redefine or limit the class if necessary." Begley v. Windsor Surry Co., No. 17-cv-317, 2018 WL 1401796, at *11 (D.N.H. Mar. 19, 2018) (McCafferty, J.) (quoting Wirt v. Bon–Ton Stores, Inc., 134 F. Supp. 3d 852, 862 (M.D. Pa. 2015)); see also Manning, 725 F.3d at 60 ("[T]he district court has many tools at its disposal to address concerns regarding the appropriate contours of the putative class, including redefining the class during the certification process or creating subclasses.").

Additionally, the court, without the benefit of discovery and full briefing, "is not in a position to properly assess and weigh the considerations bearing on" predominance and commonality under Fed. R. Civ. P. 23. Begley, 2018 WL 1401796, at *11. To satisfy predominance at the class certification stage, for example, the court must determine "whether there is 'reason to think that [individualized] questions will overwhelm common ones and render

class certification inappropriate."[26] In re Nexium Antitrust Litig., 777 F.3d 9, 21 (1st Cir. 2015) (noting that a plaintiff seeking class certification does not need "to prove that each element of her claim is susceptible to classwide proof" (quoting Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds, 568 U.S. 455, 469 (2013), and Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258, 275 (2014))). To answer this question, courts frequently must "'formulate some prediction as to how specific issues will play out.'" Begley, 2018 WL 1401796, at *11 (quoting In re Asacol Antitrust Litig., No. 15–cv–12730, 2017 WL 5196381, at *22 (D. Mass. Nov. 9, 2017)). From experience, "some level of discovery is essential to such an evaluation."[27] Murdock-Alexander v. Tempsnow Emp't, No. 16-cv-5182, 2016 WL 6833961, at *5 (N.D. Ill. Nov. 21, 2016); see also Begley, 2018 WL 1401796, at *11.

Sig Sauer's cited authorities, while offered to persuade this court to strike or dismiss Ortiz's class allegations now, further demonstrate that its request is best left for another day. For example, in Manning—the first case cited in Sig Sauer's argument to strike Ortiz's proposed class definition—the Court of Appeals vacated the district court's "prematur[e] . . . decision to strike the class and collective allegations on the pleadings." 725 F.3d at 60. Likewise, in S. States Police Benevolent Ass'n v. First Choice Armor & Equip., Inc., 241 F.R.D. 85, 89 (D. Mass. 2007) and In re Dial Complete Mktg. & Sales Practices Litig., 312 F.R.D. 36, 74 (D.N.H. 2015), Judge Gorton and Judge McAuliffe considered whether the respective plaintiffs' putative

---

[26] To satisfy commonality at the class certification stage, a plaintiff must demonstrate that members of the class "have suffered the same injury." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).

[27] This is not to say that Sig Sauer's preliminary arguments regarding Ortiz's specific nationwide claims may not ultimately persuade the court. For example, for Ortiz's fraud-based claims, this court is well aware that reliance is typically an element of such claims, and that "certification generally is inappropriate when individual reliance is an issue." Rothwell v. Chubb Life Ins. Co. of Am., 191 F.R.D. 25, 31 (D.N.H. 1998). At oral argument, Ortiz represented that he intends to address issues such as individual-versus-classwide reliance at the class certification stage. The court thus chooses to address these issues after they are fully briefed.

classes satisfied Rule 23's requirements in the context of motions for class certification, and not in the posture of a Rule 12(b) motion to dismiss.[28]

For these reasons, the court declines to strike or dismiss Ortiz's class allegations at this time. This decision is without prejudice to Sig Sauer properly raising these arguments after discovery in an objection to a motion for class certification.

For related reasons, this decision also takes no position as to the choice-of-law issues raised for the first time by Ortiz's opposition to the motion to dismiss (rather than his complaint). In attempting to show that he can bring claims for consumers nationwide, Ortiz argues that "New Hampshire law can be applied to the claims of all [relevant consumers]," regardless of where they purchased their P320, "even for claims where there are meaningful differences between" New Hampshire and other interested states' laws.[29] See Clark, 107 N.H. at 353-55 (applying five-factor choice-of-law test). Sig Sauer disputes this choice-of-law analysis, arguing that for contract cases, the New Hampshire courts apply the law of the state with the most significant relationship to the contract, that is, where each individual putative class member bought the product. See Glowski v. Allstate Ins. Co., 134 N.H. 196, 197 (1991); see also Fenwick v. Ranbaxy Pharm., Inc., 353 F. Supp. 3d 315, 330-31 (D.N.J. 2018) (finding in a putative nationwide class based on products sold across the country that the state with the most

_____

[28] Sig Sauer also cites to several cases from outside the First Circuit to support its good-faith arguments, but in only a handful of Sig Sauer's curated cases did a district court actually dismiss the plaintiffs' class allegations in response to a Rule 12(b)(6) motion to dismiss. See, e.g., John v. Nat'l Sec. Fire & Cas. Co., 501 F.3d 443, 445 (5th Cir. 2007) (affirming district court's vacating of class allegations where the plaintiffs declined to argue on appeal that their original class definition, rather than their new definition, satisfied Rule 23's requirements).

[29] Ortiz. Opp. to Mot. to Dismiss at 10-11 (relying on the five-factor test for choice of law adopted in Clark v. Clark, 107 N.H. 351, 353-55 (1966), and recently applied by this district court in Caldwell v. Atrium Med. Corp., No. 17-cv-021, 2019 WL 4600382, at *1 (D.N.H. Sept. 23, 2019) (McCafferty, J.)).

significant relationship to the contract is the one where each putative class member bought the product).

While Sig Sauer's cited authority may more precisely address the contract-based claims at issue here, see also TIG Ins. Co. v. ElFlow Ins. Ltd., No. 14-cv-459-JL, 2015 WL 5714686, at *4 (D.N.H. Sept. 29, 2015) (recognizing that the most-significant-relationship test did not abrogate the five-factor Clark test in contract cases), the court need not resolve the choice-of-law conflict at this time. On this motion to dismiss, the parties agree that for Ortiz's individual state-law claims, Arizona and/or New Hampshire law applies. Sig Sauer has not argued that an "actual conflict" exists between these state's breach-of-warranty and fraud laws. See SIG Arms Inc. v. Emp'rs Ins. of Wausau, 122 F. Supp. 2d 255, 258–59 (D.N.H. 2000) (noting that "New Hampshire law [must] actually conflict[] with the laws of the other interested states"). And as discussed below, Sig Sauer did not argue that Ortiz failed to plead any elements (of any state-law claim) unique to Arizona, New Hampshire, or any other states' laws.[30] As such, the parties' dispute over whether New Hampshire law applies across the board to the putative class members' claims presents only class certification issues, which, as previously explained, should be decided at the class certification stage, under the facts and circumstances of this case.[31]

## C.     Ortiz's individual claims

Finally, Sig Sauer asserts that Ortiz's warranty-based claims, unjust enrichment claim, and consumer protection claim all fail as a matter of law. As discussed below, the court agrees as

---

[30] See also infra at 18 n.37 (rejecting Sig Sauer's contention that Ortiz failed to plead a breach-of-an-implied-warranty claim under Arizona law because Sig Saur raised the contention for the first time at oral argument, rather than in its motion papers).

[31] But cf. infra Part III.C.3 (dismissing Ortiz's NHCPA claim because the offending conduct—the alleged misrepresentations—were not received in New Hampshire, as required for a NHCPA claim based on a misrepresentation).

to only one legal claim: Ortiz has failed to state a claim under the New Hampshire Consumer Protection Act. As such, the court dismisses that claim without prejudice but permits Ortiz to move forward on all other counts.

1. <u>Warranty-based claims</u>

In Counts 1-4 of the complaint, Ortiz claims that Sig Sauer breached express and implied warranties regarding the safety of the P320 in violation of the Magnuson-Moss Warranty Act, as well as Arizona and New Hampshire common law. Sig Sauer contends that Ortiz's warranty-based claims fail for three reasons, none of which persuade the court to dismiss Ortiz's claims.

*a. Establishing breached express and implied warranties*

Frist, Sig Sauer asserts that Ortiz's breach-of-warranty claims should be dismissed because Ortiz cannot establish any enforceable warranty was breached and because Sig Sauer provided all P320 owners with a "drop fire fix" through the Voluntary Upgrade Program.[32] In its view, Ortiz's warranty claims "ignore[] the express warranty Sig Sauer provided with the P320 pistol—the Lifetime Limited Warranty—[which] promises to 'correct any defect in the firearm for the original purchaser by repair, adjustment or replacement at SIG SAUER's option,' provided the firearm is returned to SIG Sauer."[33] Sig Sauer argues that, had Ortiz returned his firearm, it would have provided "'a number of enhancements in function, reliability and overall safety include drop performance' . . . completely free of charge."[34]

As Ortiz points out, however, he has "not br[ought] a claim alleging that [Sig Sauer] breached its Lifetime Limited Warranty. Instead he asserts that [Sig Sauer] breached its separate

---

[32] Sig Sauer Mot. to Dismiss Mem. at 19-20.

[33] <u>Id.</u> at 19.

[34] <u>Id.</u> at 19-20 (quoting Compl. ¶ 37).

express warranty regarding the safety of the SIG Sauer P320 and its implied warranty of merchantability" [35]—warranties that the Limited Lifetime Warranty (a document, which the court notes, is outside of the complaint's allegations) arguably neither covers nor expressly disclaims.[36]

Additionally, the Voluntary Upgrade Program does not moot Ortiz' claims, at least at this Rule 12(b) stage, because he has alleged the Program would not provide him full compensation were he to participate. Unlike the plaintiffs in Sig Sauer's cited authority, Ortiz has alleged that the Program "would not compensate him for the significantly diminished resale value of his SIG P320 resulting from the drop fire design defect." See, e.g., Hadley v. Chrysler Grp. LLC, No. 13-13665, 2014 WL 988962, at *6 (E.D. Mich. Mar. 13, 2014), aff'd, 624 F. App'x 374 (6th Cir. 2015) ("Plaintiffs do not allege here that [the] repair is inadequate; they only allege that the repair should have been done quicker."); Vavak v. Abbott Labs., Inc., No. SACV 10-1995, 2011 WL 10550065, at *3 (C.D. Cal. June 17, 2011) (dismissing express and implied warranty claims, seeking restitution where pre-litigation recall offered a full refund to purchasers). Accordingly, to the extent Sig Sauer's mootness argument has merit, the court prefers to make this determination after discovery to better flush out Ortiz's diminished-value allegations. See Order

---

[35] Ortiz Opp. to Mot. to Dismiss at 15; see also Compl. ¶ 71 ("The terms of the contract include the promises and affirmations of fact made by Defendant on the labeling, marketing, and advertising of the SIG P320 pistols, including that the pistols were safe for their intended uses, were 'drop safe' and 'won't fire unless you want [them] to.'").

[36] Per the Limited Lifetime Warranty: "Sig Sauer warrant[ed] that the enclosed firearm was originally manufactured free of defects in material, workmanship and mechanical function." Limited Lifetime Warranty (doc. no. 6-2) (emphasis added). Ortiz observes that in a different case in a different jurisdiction involving a different plaintiff and different defense counsel, Sig Sauer represented that this Limited Warranty "does not cover alleged design defects." See Sig Sauer's Mot. to Dismiss [dkt. #17], Gordon, 4:19-cv-00585, at 21 (S.D. Tex. filed Apr. 16, 2019). These observations, while helpful to understanding the larger case, are disregarded for purposes of evaluating the sufficiency of Ortiz's warranty claims. See Graf v. Hosp. Mut. Ins. Co., 754 F.3d 74, 76 (1st Cir. 2014) ("'Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . .'" (quoting Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001))).

Denying Mot. to Dismiss [Dkt. #41], <u>Hartley v. SIG Sauer, Inc.</u>, No. 4:18-cv-00267-HFS, at 10 n.1 (W.D. Mo. Mar. 25, 2019) ("Any argument as to mootness is more appropriate on a motion for summary judgment after supplying evidence as to the upgrade program" particularly "because plaintiffs here allege that the defect has not been cured by the Voluntary Upgrade.").

b.    *MMWA claim based on alleged marketing and advertising misrepresentations*

Second, Sig Sauer contends that Count 1, Ortiz's Magnuson-Moss Warranty Act claim, should be dismissed because the "[b]rochures and consumer advertising" on which Ortiz bases his warranty claims "cannot create a warranty enforceable under the MMWA." This is incorrect.

The MMWA provides a federal cause of action for consumers harmed by a supplier's failure to comply with the terms of a written warranty, implied warranty, or service contract. 15 U.S.C. § 2310(d)(1). As defined therein, a "written warranty" includes:

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free <u>or</u> will meet a specified level of performance over a specified period of time.

15 U.S.C. § 2301(6) (emphasis added). "Because the statute explicitly incorporates the consumer's rights under state law in the definition of who may be a consumer, courts have interpreted the Magnuson-Moss Act to incorporate the requirements of a state law cause of action." Duncan v. Nissan, 305 F. Supp. 3d 311, 322-23 (D. Mass. 2018); see also, e.g., Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 n.3 (9th Cir. 2008) (stating that "the federal claims hinge on the state law warranty claims"). As such, Ortiz's MMWA claim must also meet the requirements for express and implied warranty claims under state law.[37] See Tobin v.

---

[37] In its motion to dismiss, Sig Sauer did not dispute that Ortiz has adequately pled express and implied warranty claims under state law (assuming, of course, that Ortiz has standing to bring such state law claims). At oral argument, however, Sig Sauer argued for the first that Ortiz cannot recover economic damages on an implied warranty claim under Arizona law because he lacks direct privity with Sig Sauer. The court takes no position on the merits of this argument at

Samsung Elecs. Am., Inc., 2019 WL 1399557, at *7 (D.N.J. Mar. 27, 2019) ("As correctly stated by the parties, MMWA claims stand or fall with the claimant's express and implied warranty claims under state law.").

Here, Ortiz has sufficiently alleged that Sig Sauer breached the first type of warranty actionable under the MMWA: a warranty that the P320 was "defect free." Specifically, Ortiz alleges that Sig Sauer represented that the "design of the P320 '[p]revents the strike from releasing unless the trigger is pulled,' rendering it 'drop safe;'" however, the P320 allegedly was not drop safe "because it has a design defect that causes the gun to fire unintentionally when dropped."[38]

Sig Sauer's cited authorities, which focus solely on the second type of actionable warranties involving product performance, are inapposite to the sufficiency of Ortiz's allegations. In Skelton v. Gen. Motors Corp.v, for example, the plaintiff alleged that General Motors breached warranties that its automobiles' transmissions "would meet a specified level of performance" by substituting inferior transmissions to those promised. 660 F.2d 311, 322 (7th Cir. 1981). Similarly, in In re Scotts EZ Seed Litig., the plaintiff alleged that certain statements in the defendant's advertising "promise[d] [that] EZ Seed 'will meet a specific level of

this time, but considers it waived for purposes of the motion to dismiss. In the First Circuit, courts consistently hold that "arguments not raised in a party's initial brief and instead raised for the first time at oral argument are considered waived." See, e.g., United States v. Leoner-Aguirre, 939 F.3d 310, 319 (1st Cir. 2019); United States v. Pizarro–Berríos, 448 F.3d 1, 5–6 (1st Cir. 2006) ("We have consistently held that, except in extraordinary circumstances, arguments not raised in a party's initial brief and instead raised for the first time at oral argument are considered waived."); Conservation Law Found., Inc. v. Cont'l Paving, Inc., No. 16-cv-339, 2016 WL 7116019, at *1 (D.N.H. Dec. 6, 2016). It is not enough, as Sig Sauer argues, that a party "merely mention[ed]" the relevant statute "in the most skeletal way, leaving the court to do counsel's work." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). "[L]itigant[s] ha[ve] an obligation 'to spell out [their] arguments squarely and distinctly'" in their initial briefing "or else forever hold [their] peace." Id. (internal citation omitted).

[38] Compl. ¶¶ 13-15.

performance over a specified period of time.'"  No. 12-cv-4727, 2013 WL 2303727, at *4 (S.D.N.Y. May 22, 2013).

Sig Sauer has failed to show that Ortiz's MMWA claim, based on Sig Sauer's representations that the P320's design rendered it drop safe, does not suffice as a matter of law.

*c.*    *Notice*

Finally, Sig Sauer argues that Ortiz's MMWA claim should be dismissed because he purportedly failed to provide the advanced notice required by the MMWA and Arizona law.[39] The court disagrees, finding Ortiz's notice, sent three-days prior to filing suit, provided sufficient notice under the MMWA for filing a class action complaint.  Additionally, Sig Sauer has failed to show that Ortiz's notice, sent nearly two-years after the Voluntary Upgrade Program's roll out, was untimely under Arizona commercial law.

i.    <u>MMWA notice requirement</u>

The MMWA provides, in relevant part, that:

> No action (other than a class action . . .) may be brought . . . for failure to comply with any obligation under any written or implied warranty or service contract, and a class of consumers may not proceed in a class action under such subsection with respect to such a failure except to the extent the court determines necessary to establish the representative capacity of the named plaintiffs, unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure to comply. In the case of such a class action . . . brought under subsection (d) for breach of any written or implied warranty or service contract, such reasonable opportunity will be afforded by the named plaintiffs and they shall at that time notify the defendant that they are acting on behalf of the class.

15 U.S.C. § 2310(e).

---

[39] At oral argument, Sig Sauer conceded that this failure to provide advanced notice, if true, would constitute a technical error that would not preclude Ortiz from refiling his lawsuit.

This court's research revealed no reported decision from the First Circuit Court of Appeals or any district court in the First Circuit applying this notice requirement to individual or class action plaintiffs. Nevertheless, the federal courts generally agree that for class actions, the statue allows a named plaintiff to "bring an action prior to affording the defendant an opportunity to cure, for the purpose of establishing his or her representative capacity." In re Shop-Vac Mktg. & Sales Practices Litig., 964 F. Supp. 2d 355, 362 (M.D. Pa. 2013).[40] "While the class action is held in abeyance pending possible cure, the district court may rule on the representative capacity of the named plaintiffs." Walsh v. Ford Motor Co., 807 F.2d 1000, 1004 (D.C. Cir. 1986). And if no cure results after reasonable opportunity has passed, the district court may then proceed to the assess merits of the plaintiff's claim. See id.

Put differently, although the MMWA requires advance notice, in practice, a named plaintiff "may file a class action, but may not proceed with that action" under Fed. R. Civ. P. 23, before she or he has "afforded the defendant a reasonable opportunity to cure its alleged breach." Id. (emphasis in original). In an extreme example, the district court in Gordon v. Sig Sauer found that even one day of advanced notice satisfies the MMWA's notice provision. See 2019 WL 4572799, at *12 ("While one day does not provide Sig Sauer with a reasonable opportunity to cure, Gordon may proceed to seek class certification on the Magnuson-Moss Warranty Act claim.").

---

[40] See also, e.g., In re Amla Litig., 320 F. Supp. 3d 578, 596 (S.D.N.Y. 2018) ("[T]he fairest reading of this somewhat convoluted portion of the statute is that a class action, unlike individual actions, can be 'brought' even if the named plaintiffs have not provided notice of or an opportunity to cure their individual claims."); Flynn v. FCA US LLC, 327 F.R.D. 206, 216 (S.D. Ill. 2018) ("[P]utative [Magnuson-Moss Warranty Act] class actions may proceed to the extent necessary to establish the representative capacity of the named plaintiffs prior to providing a defendant with notice and an opportunity to cure.").

Here, Ortiz purportedly sent his notice and demand letter on or about September 24, 2019[41]—three days before he filed his putative class action complaint.[42]  (He has not yet, however, filed a motion to certify this case as a class proceeding under Rule 23.)  Additionally, "Sig Sauer appears to have had an opportunity to cure, because it has known of the issue since the 2016 Army notification and it has implemented both a changed design and the Voluntary Upgrade Program."  Gordon, 2019 WL 4572799, at *12.  Sig Sauer does not dispute this fact in its briefing, and to the contrary, asserts in its standing argument that it already offers a remedy, "which would make [Ortiz] whole."[43]

Considering these circumstances, Sig Sauer has failed to show that it has been denied a reasonable opportunity to cure Ortiz's alleged product issues.  It thus has failed to show that Ortiz's MMWA claim is precluded by the MMWA's pre-suit notice provision.

ii.    Arizona Commercial Code notice requirement

Sig Sauer's arguments concerning notice requirements under Arizona law are similarly unavailing.  Under Arizona's commercial code, a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."  Ariz. Rev. Stat. § 47-2607(C)(1).  Sig Sauer asserts that "[w]hile the question of whether notice is provided within a reasonable time is ordinarily a question of fact, the [c]ourt can find the delay unreasonable as a matter of law" because Ortiz "should have been on notice of an alleged breach" as early as August 2017, when the Voluntary Upgrade Program was

---

[41] See Sept. 24, 2019 Ltr. From Scott A. Bursor, counsel for Derick Ortiz, to Sig Sauer, Inc. (doc. no. 1-2).

[42] See Compl. at 32.

[43] See Sig Sauer Mot. to Dismiss Mem. at 10-11.

released.[44]  See also Burge v. Freelife Int'l, Inc., No. CV 09-1159-PHX-JAT, 2009 U.S. Dist. LEXIS 111499, at *6 (D. Ariz. Nov. 18, 2009) (finding complaints filed between 17 and 33 months after plaintiff learned of alleged breach were unreasonably delayed as a matter of law). The court disagrees.

Even though Sig Sauer published information regarding the P320 upgrade program in August 2017, a factual question remains as to whether such information should have placed Ortiz on notice of the drop-fire defect.  Throughout his complaint, Ortiz alleges that Sig Sauer "fail[ed] to disclose the drop fire design defect, or the importance of the fix" in its product information.[45] For example, Ortiz has alleged that in an informational video about the upgrade program, "'drop safety' is only mentioned twice," and only in the context of explaining that certain upgrades have "'nothing to do with drop safety.'"[46]  Additionally, Ortiz alleges that "[t]he only information about the drop fire design defect first appeared around August 8, 2017, is buried in the Frequently Asked Questions ("FAQ") in SIG's website, and itself fails to disclose material information."[47]  Thus, even if it were reasonable to find as a matter of law that Ortiz should have been aware of advertising materials published after he purchased his P320, Ortiz's allegations, taken as true at this Rule 12 procedural posture, create a factual question as to whether these materials should have put him on notice of the drop-fire defect.  As such, Sig Sauer has failed to show that Ortiz's pre-suit notice letter was inadequate or untimely as a matter of law.

---

[44] Id. at 22-23.

[45] Compl. ¶ 45.

[46] Id. ¶¶ 46-47.

[47] Id. ¶ 48.

2. Unjust enrichment

Sig Sauer argues that Ortiz's unjust enrichment claim fails because "the existence of a warranty . . . displaces any common law claim for unjust enrichment."[48]  On a motion to dismiss, this is incorrect.  Federal Rule of Civil Procedure 8(d) "'permits [p]laintiffs to plead alternative and even inconsistent legal theories, such as breach of contract and unjust enrichment, even if Plaintiffs only can recover under one of these theories.'"  Lass v. Bank of Am., N.A., 695 F.3d 129, 140 (1st Cir. 2012) (citing Vieira v. First Am. Title Ins. Co., 668 F. Supp. 2d 282, 294 (D. Mass. 2009)) (emphasis added).  While "it is unlikely" that Ortiz "will be able to recover on both an unjust enrichment claims and a breach of contract claim[,] . . . he is certainly entitled to plead his claims in the alternative."  Hall v. Gascard, 2017 WL 2543901, at *7 (D.N.H. June 12, 2017) (McAuliffe, J.).  On this record and under this applicable standard, the court will not dismiss Ortiz's unjust enrichment claim.

3. New Hampshire Consumer Protection Act

Finally, Sig Sauer contends that Count 8, Ortiz's New Hampshire Consumer Protection Act claim, fails as a matter of law because Ortiz received the purported misrepresentations in Arizona, where Ortiz resides, not "within" New Hampshire, as required by the NHCPA.[49]  See N.H. Rev. Stat. § 358-A:2.  Ortiz, in turn, asserts the NHCPA does not require that a consumer receive offending misrepresentations in New Hampshire for them to be actionable, and instead reaches any misrepresentations or related statements originating from a place of business in New

---

[48] Sig Sauer Mot. to Dismiss Mem. at 23.  The court observes in that making this argument (and several other points in its motion), Sig Sauer failed to cite any New Hampshire cases to support this proposition, despite the existence of ample and available authority.  See, e.g., Clapp v. Goffstown Sch. Dist., 159 N.H. 206, 210 (2009) ("It is a well-established principle that the court ordinarily cannot allow recovery under a theory of unjust enrichment where there is a valid, express contract covering the subject matter at hand.").

[49] Sig Sauer Mot. to Dismiss Mem. at 24.

Hampshire. As discussed below, the court agrees with Sig Sauer that under the NHCPA, the offending conduct alleged in the complaint occurred in Arizona, not New Hampshire, and thus is not actionable under the NHCPA.

To state a valid claim under section 358-A:2 of the NHCPA, a plaintiff must demonstrate that the defendant engaged in an "unfair method of competition" or an "unfair or deceptive act or practice in the conduct of any trade or commerce within this state." N.H. Rev. Stat. § 358-A:2 (emphasis added). The New Hampshire Supreme Court has not specifically addressed how the "within this state" requirement applies to misrepresentation claims under § 358-A:2. Nevertheless, this district court has held that, for purposes of the statute, a misrepresentation is made "within-this-state" when New Hampshire is the "locus of the offending conduct," or, put differently, whenever a person receives a misrepresentation in the State of New Hampshire. See BAE Sys. Info. & Elecs. Sys. Integration Inc. v. SpaceKey Components, Inc., No. 10-cv-370, 2011 WL 1705592, at *6 (D.N.H. May 4, 2011) (McCafferty, Mag. J.) (finding that "the locus of the conduct proscribed . . . is the place where the misrepresentation is received" (citing Environamics Corp. v. Ferguson Enters., Inc., No. 00-cv-579, 2001 WL 1134727, at *4 (D.N.H. Sept. 24, 2001) (DiClerico, J.)).

In Environamics, for example, a Virginia-based defendant shipped a contaminated pump with documentation representing it had been decontaminated to the plaintiff in New Hampshire. Environamics, 2001 WL 1134727, at *4. The plaintiff consequently filed an NHCPA claim against the defendant alleging misrepresentations in the pump's documentation. Id. Under those circumstances, Judge DiClerico held that the plaintiff stated a valid NHCPA claim because "the deceptive act of misrepresenting the condition of the pump occurred in New Hampshire when Environamics received the pump and its allegedly false documentation." Id. In other words, the

locus of the offending conduct was New Hampshire because that is where the plaintiff received the pump and the documents misrepresenting the pump's safety.  Id.

Here, Ortiz's consumer protection allegations focus on Sig Sauer's allegedly deceptive representations.[50]  In the complaint, Ortiz intimates that he received these alleged misrepresentations and omissions in Arizona, where all his experiences with the P320 pistol occurred.  He has not asserted that he received any alleged misrepresentations in New Hampshire or was injured by undisclosed information in the state.  As such, it does not appear that any offending conduct occurred "within the state," for purposes of the consumer protection statute.  See also BAE Sys., 2011 WL 1705592, at *5 (dismissing NHCPA claims where the out-of-state plaintiff alleged "[a]t most . . .  that it was misled by advertising directed toward it from New Hampshire").

Ortiz's citations to Mueller Co. v. U.S. Pipe & Foundry Co. and similar cases fail to support his more expansive reading of the NHCPA's territorial reach.  In Mueller, a New Hampshire business filed an NHCPA claim against an Alabama-based defendant based on the defendant's attempts to market trade-dress-infringing fire hydrants.  No. 03-cv-170, 2003 WL 22272135, at *2 (D.N.H. Oct. 2, 2003) (DiClerico, J.).  The plaintiff argued that defendant's misrepresentations occurred "within the state" because both parties "compete[d] in a national

---

[50] See Compl. ¶ 123 ("Defendant engaged in deceptive business practices prohibited by the NHCPA, including (1) representing that the SIG P320 pistols have characteristics, uses, benefits, and qualities which they do not have, (2) representing that SIG P320 pistols are of a particular standard, quality, and grade when they are not, and (3) failing to disclose information concerning the SIG P320 pistols with the intent to induce consumers to purchase or lease the firearms.") (emphasis added); id. ¶ 124 ("This conduct violates several specific provisions of RSA 358-A:2 of the NHCPA including V.: 'Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;' VII.: 'Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another' and IX.: 'Advertising goods or services with intent not to sell them as advertised[.]'") (emphasis added).

market," "a substantial part of the events giving rise to their claims took place in New Hampshire," and those events "caused injury to [the plaintiff], located in New Hampshire." Id. The court disagreed because the plaintiff failed to specifically allege that any offending advertisements or offers took place in New Hampshire. Id. at *6. Without such allegations, the court concluded that the plaintiffs "c[ould] prove no set of facts which would entitle them to relief on their statutory claim." Id. As such, it dismissed their NHCPA claim.

Similarly, in Precourt v. Fairbank Reconstruction Corp., another case cited by Ortiz, the plaintiff filed a NHCPA claim against a Nebraska defendant alleging misrepresentations regarding a tainted ground beef product that resulted in the plaintiff's mother's death. 856 F. Supp. 2d 327, 343 (D.N.H. 2012). The contaminated beef was originally fabricated in Nebraska and then sent to a distributor in New York, where it was further distributed to other states, including New Hampshire. Id. at 342. Judge McCafferty ultimately dismissed the claim because the plaintiff failed to allege the defendant "shipped anything to New Hampshire or made any representations to anyone in New Hampshire," but rather, the representations were received in New York where the defendant initially shipped the contaminated beef. Id. at 343.[51]

Ortiz's Count 8 claiming Sig Sauer violated the New Hampshire Consumer Protection Act is therefore dismissed.

## IV.   Conclusion

Ortiz has sufficiently pled standing to sue, as well as all but one of his legal claims—his New Hampshire Consumer Protection Act count. As such, the court grants in part Sig Sauer's

---

[51] Ortiz also relies on Pacamor Bearings, Inc. v. Minebea Co., an evidentiary ruling, to show the NHCPA reaches Sig Sauer's conduct here. See 918 F. Supp. 491, 504 (D.N.H. 1996). While the court in Pacamor found that out-of-state sales were relevant to the plaintiff's NHCPA claim, the court made no findings as to where misrepresentations occur for purposes of the statute. See id. at 504; BAE Systems, 2011 WL 1705592, at *4 (deciding not to rely on Pacamor because the opinion "says little about the facts giving rise to the plaintiff's [NH]CPA claim.").

motion to dismiss[52] and dismisses Count 8 of the complaint without prejudice.  The remainder of Sig Sauer's motion to dismiss is denied.

        **SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: March 23, 2020

cc:    Benjamin T. King, Esq.
        Joseph Marchese, Esq.
        Joshua Arisohn, Esq.
        Neal J. Deckant, Esq.
        Charles G. Douglas, III, Esq.
        Michael J. Quinn, Esq.
        Robert L. Joyce, Esq.
        Benjamin B. Folsom, Esq.

---

[52] Doc. no. 6.