IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

DERICK ORTIZ, individually and on behalf of all others similarly situated,

        Plaintiff,

  v.

SIG SAUER, INC.,

        Defendant.

CASE NO. 1:19-cv-01025-JL

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO EXCLUDE DEFENDANT'S PROFFERED EXPERT DR. ANDREW LEMON**

**TABLE OF CONTENTS**

**PAGE(S)**

INTRODUCTION ............................................................................................................................ 1

I.    LEGAL STANDARD FOR THE ADMISSIBILITY OF EXPERT TESTIMONY ................................................................................................................ 2

II.    DR. LEMON IS NOT AN EXPERT AS TO SURVEY METHODOLOGY OR CONJOINT ANALYSIS ................................................................................... 4

III.    DR. LEMON'S TESTIMONY IS NOT THE RESULT OF RELIABLE METHODS .................................................................................................................. 6

IV.    DR. LEMON DID NOT ATTEMPT TO CALCULATE OVERPAYMENT DAMAGES ........................................................................... 8

      A.    Legal Standard ......................................................................................... 8

      B.    Dr. Lemon Did Nothing To Calculate Overpayment Damages ........................... 10

V.    DR. LEMON FAILED TO ADDRESS ONE OF PLAINTIFF'S THEORIES OF LIABILITY ................................................................................... 11

CONCLUSION ............................................................................................................................ 11

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Bailey v. Rite Aid Corp.*,
    2021 WL 1668003 (N.D. Cal. Apr. 28, 2021)............................................................................ 2

*Banh v. American Honda Motor Co., Inc.*,
    2020 WL 4390371 (C.D. Cal. July 28, 2020)........................................................................... 2

*Bourjaily v. United States*,
    483 U.S. 171 (1987) ............................................................................................................. 3, 4

*Brown v. Hain Celestial Group, Inc.*,
    2014 WL 6483216 (N.D. Cal. Nov. 18, 2014) ......................................................................... 1

*Carrozza v. CVS Pharmacy, Inc.*,
    391 F. Supp. 3d 136 (D. Mass. 2019)....................................................................................... 4

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ............................................................................................................. 3, 4

*de Lacour v. Colgate-Palmolive Co.*,
    2021 WL 1590208 (S.D.N.Y. Apr. 23, 2021) .......................................................................... 2

*Dzielak v. Maytag*,
    2017 WL 1034197 (D.N.J. March 17, 2017)............................................................................ 1

*Fitzhenry-Russell v. Dr Pepper Snapple Group, Inc.*,
    2018 WL 3126385 (N.D. Cal. June 26, 2018).......................................................................... 1

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997) ................................................................................................................. 4

*Guido v. L'Oreal, USA, Inc.*,
    2014 WL 6603730 (C.D. Cal. July 24, 2014)........................................................................... 1

*Hadley v. Kellogg Sales Co.*,
    2018 WL 3954587 (N.D. Cal. Aug. 17, 2018) ..................................................................... 1, 2

*Hudock v. LG Elecs. USA, Inc.*,
    2020 U.S. Dist. LEXIS 54994 (D. Minn. Mar. 30, 2020) ........................................................ 2

*In Re Arris Cable Modem Consumer Litig.*,
    2018 WL 3820619 (N.D. Cal. Aug. 10, 2018) ......................................................................... 1

*In re Scotts EZ Seed Litig.*,
   304 F.R.D. 397 (S.D.N.Y. 2015) ................................................................................ 1

*In re: Dial Complete Marketing and Sales Practices Litigation*,
   320 F.R.D. 326 (D.N.H. 2017) ............................................................................... 1, 9

*In re: Lenovo Adware Litigation*,
   2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ............................................................ 1

*Kaupelis v. Harbor Freight Tools, Inc.*,
   2020 WL 5901116 (C.D. Cal. Sep. 23, 2020) ........................................................... 2

*Khoday v. Symantec Corp.*,
   2014 WL 1281600 (D. Minn. March 13, 2014) ........................................................ 1

*Krommenhock v. Post Foods, LLC*,
   2020 U.S. Dist. LEXIS 40463 (N.D. Cal. Mar. 9, 2020) .......................................... 2

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ................................................................................................... 3

*Martinelli v. Johnson & Johnson*,
   2019 WL 1429653 (E.D. Cal. Mar. 29, 2019) .......................................................... 2

*McMorrow v. Mondelez*,
   2021 WL 859137 (S.D. Cal. Mar. 8, 2021) .............................................................. 2

*Microsoft v. Motorola, Inc.*,
   904 F. Supp. 2d 1109 (W.D. Wa. 2012) ................................................................... 1

*Milward v. Acuity Specialty Prods. Grp., Inc.*,
   639 F.3d 11 (1st Cir. 2011) .................................................................................... 3, 4

*Ruiz–Troche v. Pepsi Cola of P.R. Bottling Co.*,
   161 F.3d 77 (1st Cir. 1998) ....................................................................................... 3

*Sanchez-Knutson v. Ford Motor Company*,
   310 F.R.D. 529 (S.D. Fl. 2015) ................................................................................. 1

*TV Interactive Data Corp. v. Sony Corp.*,
   929 F. Supp. 2d 1006 (N.D. Cal. 2013) .................................................................... 1

*Zibolis-Sekella v. Ruehrwein*,
   2013 WL 12177476 (D.N.H. Sept. 6, 2013) ............................................................. 3

**RULES**

Federal Rule of Evidence 702 ................................................................................... 2, 3, 4, 8

**OTHER AUTHORITIES**

Reference Manual on Scientific Evidence (3d ed. 2011) ........................................................... 8, 9

## INTRODUCTION

Plaintiff Derek Ortiz ("Plaintiff" or "Plaintiff Ortiz") filed this putative class action against Defendant SIG Sauer, Inc. ("SIG" or "SIG Sauer") for manufacturing, distributing, and selling SIG P320-brand semi-automatic pistols that, due to a design defect (the "Defect" or the "Drop Fire Defect"), are susceptible to inadvertently discharging a round of ammunition if dropped on the ground (a "drop fire"). *See* Class Action Complaint ("Compl.") ¶ 1. Plaintiff alleges that the Defect resulted in, among other things, being overcharged (an "Overpayment" or "Overpayment Damages") at the time of purchase. *See id.* ¶ 8.

Plaintiff has examined the issue of the alleged Overpayment with extensive expert testimony and consumer survey evidence from Steven P. Gaskin and Colin B. Weir, independent experts retained by Class Counsel, who have used the conjoint analysis methodology to estimate Overpayment Damages "due solely to the presence of the Drop Fire Defect," finding it to be in the amount of ▮▮▮▮ of the purchase price. Weir Decl. ¶¶ 7, 54; Gaskin Report ¶¶ 11, 53-54. Mr. Gaskin has further affirmed that this calculation "is applicable across all SIG P320s during the Class Period." Gaskin Report ¶ 53. Conjoint analysis is a time-tested, peer-reviewed, well-accepted, and widely used method that "has a long history of use in litigation to determine economic damages (including in this district), as well as in academia and in industry." Weir Rebuttal Decl. ¶ 9.[1]

---

[1] *Citing In re: Dial Complete Marketing and Sales Practices Litigation*, MDL Case No. 11-md-2263-SM, Opinion No. 2017 DNH 051; *Applying Conjoint Analysis to Legal Disputes: A Case Study*, Wind, Yoram, *et al*.; *When "All Natural" May Not Be*, Analysis Group Forum (Winter 2013), http://www.analysisgroup.com/forums/winter-2013/when-all-natural-may-not-be/ (last accessed Aug. 1, 2016); *Khoday v. Symantec Corp.*, 2014 WL 1281600, at *10 (D. Minn. Mar. 13, 2014); *Sanchez-Knutson v. Ford Motor Company*, 310 F.R.D. 529, 538-39 (S.D. Fl. 2015); *In re: Lenovo Adware Litigation*, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016); *Guido v. L'Oreal, USA, Inc.*, 2014 WL 6603730, at *5, *10-14 (C.D. Cal. July 24, 2014); *Brown v. Hain Celestial Group, Inc.*, 2014 WL 6483216, at *19 (N.D. Cal. Nov. 18, 2014); *Microsoft v. Motorola, Inc.*, 904 F. Supp. 2d 1109, 1119-20 (W.D. Wa. 2012); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 413-15 (S.D.N.Y. 2015); *Dzielak v. Maytag*, 2017 WL 1034197, at *6 (D. NJ. Mar. 17, 2017); *TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1022 & n.6 (N.D. Cal. 2013); *Fitzhenry-Russell v. Dr Pepper Snapple Group, Inc.*, 2018 WL 3126385 (N.D. Cal. June 26, 2018); *In Re Arris Cable Modem Consumer Litig.*, 2018 WL 3820619, at *25-31 (N.D. Cal. Aug. 10, 2018); *Hadley v. Kellogg*

Defendant's sole expert, Dr. Andrew Lemon, performed no relevant or reliable analysis. Dr. Lemon is an economist who Defendant hired to "(1) explain the economics of measuring damages in the context of Plaintiff's theory of harm; and (2) assess whether Plaintiff's experts, Mr. Steven P. Gaskin and Mr. Colin B. Weir, have reasonably and reliably measured the damages proposed class members putatively suffered according to Plaintiff's theory of harm." Lemon Report ¶ 10. However, Dr. Lemon is not qualified to offer expert testimony in this matter. Dr. Lemon has tiptoed around the Overpayment issue by purportedly criticizing Mr. Gaskin's and Mr. Weir's analysis, without doing any damages calculation or any empirical analysis of his own. Unlike Plaintiff's experts, Dr. Lemon never endeavored to measure Overpayment Damages. Nor did Dr. Lemon conduct any consumer survey or employ any survey evidence. Moreover, Dr. Lemon lacks the expertise and experience to criticize Mr. Weir and Mr. Gaskin. In fact, Dr. Lemon admits that he is not an expert in conjoint or survey research methodology. Moreover, Dr. Lemon failed to address the aspect of Plaintiff's theory of liability regarding the P320's design defect that stands independent from SIG's affirmative misrepresentations of "drop safe[ty]." *See, e.g.*, Compl. ¶¶ 1, 41, 86. As such, Dr. Lemon should be barred from offering any opinion Plaintiff's theory of damages.

I.   **LEGAL STANDARD FOR THE ADMISSIBILITY OF EXPERT TESTIMONY**

Federal Rule of Evidence 702 provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or

---

*Sales Co.*, 2018 WL 3954587, at *11-16 (N.D. Cal. Aug. 17, 2018); *Martinelli v. Johnson & Johnson*, 2019 WL 1429653, at *3-4 (E.D. Cal. Mar. 29, 2019); *Krommenhock v. Post Foods, LLC*, 2020 U.S. Dist. LEXIS 40463 (N.D. Cal. Mar. 9, 2020); *Hudock v. LG Elecs. USA, Inc.*, 2020 U.S. Dist. LEXIS 54994 (D. Minn. Mar. 30, 2020); *Koenig v. Vizio, Inc.*, Case No. BC702266 (L.A. Super. Ct. Aug. 24, 2020); *Banh v. American Honda Motor Co., Inc.*, 2020 WL 4390371 (C.D. Cal. July 28, 2020); *Kaupelis v. Harbor Freight Tools, Inc.*, 2020 WL 5901116 (C.D. Cal. Sep. 23, 2020); *McMorrow v. Mondelez*, 2021 WL 859137 (S.D. Cal. Mar. 8, 2021); *de Lacour v. Colgate-Palmolive Co.*, 2021 WL 1590208 (S.D.N.Y. Apr. 23, 2021); *Bailey v. Rite Aid Corp.*, 2021 WL 1668003 (N.D. Cal. Apr. 28, 2021).

otherwise if the expert's testimony: "[(1)] … is based on sufficient facts or data; [(2)] … is the product of reliable principles and methods; and [(3)] … has reliably applied the principles and methods to the facts of the case." *See* Fed. R. Evid. 702.  "As the structure of the rule suggests, before the factfinder in a case can consider testimony over an adverse party's objection, the court serves as a gatekeeper, 'ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Zibolis-Sekella v. Ruehrwein*, 2013 WL 12177476, at *1 (D.N.H. Sept. 6, 2013) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)).  Thus, after ensuring that the witness has the requisite expertise, the trial judge must "evaluate an expert's proposed testimony for both reliability and relevance prior to admitting it." *Ruiz–Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 80 (1st Cir. 1998).

Expert opinion is admissible under Rule 702 if, among other things, "the testimony is the product of reliable principles and methods." Fed. R. Evid. 702.  Factors that may be considered in determining whether an expert witness's opinion is based on reliable principles and methods include "(1) whether the theory or technique can be and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential rate of error; and (4) the level of the theory or technique's acceptance within the relevant discipline." *Milward v. Acuity Specialty Prods. Grp., Inc.*, 639 F.3d 11, 14 (1st Cir. 2011). These factors do not constitute a definitive checklist or test, and the admissibility of expert testimony depends on the particular circumstances of the case. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999).

The proponent of expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence.  *See Daubert*, 509 U.S. at 592 n. 10 ("These matters should be established by a preponderance of proof.") (citing *Bourjaily v. United States*, 483 U.S. 171,175-

76 (1987)); *see also* Fed. R. Evid. 702 advisory committee's note ("[T]he admissibility of all expert testimony is governed by the principles of Rule 104(a). Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence."). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." *Milward v. Acuity Specialty Prod. Grp., Inc.*, 639 F.3d 11, 15 (1st Cir. 2011) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

"A witness who has no relevant expertise or familiarity with a subject matter may not [] simply parrot the conclusions of an expert who does. At a minimum, to allow such testimony would effectively permit a party to evade the disclosure requirements of Rule 26 and would preclude meaningful cross-examination." *Carrozza v. CVS Pharmacy, Inc.*, 391 F. Supp. 3d 136, 145 (D. Mass. 2019), aff'd, 992 F.3d 44 (1st Cir. 2021).

## II. DR. LEMON IS NOT AN EXPERT AS TO SURVEY METHODOLOGY OR CONJOINT ANALYSIS

Because he offers no empirical analysis of his own, Dr. Lemon's testimony is limited to his critique of the methodology employed by Mr. Gaskin and Mr. Weir. And such testimony should be barred because Dr. Lemon himself admits that he is not an expert in survey research methodology. Lemon Dep. at 30:15-23 ████████████████████████ ████████████.

Indeed, Dr. Lemon's sole justification for his purported qualification to critique the analysis of Mr. Gaskin and Mr. Weir is that he is an economist, so (Dr. Lemon argues) he is thus qualified to critique anything tangentially related to economics or data collection. But Dr. Lemon has never once designed a conjoint survey:

█ ████████████████████████████████████

4



Lemon Dep. at 33:7-11. Nor has Dr. Lemon ever conducted a conjoint analysis survey:



Lemon Dep. at 33:17-20. Nor has Dr. Lemon personally designed or conducted a market research survey:



Lemon Dep. at 41:3-18.

Dr. Lemon has never opined on survey research methodology or conjoint analysis outside of the litigation context.[2] Indeed, Dr. Lemon has never authored a single publication in the field of survey research methodology, or in conjoint analysis specifically:



---

[2] *See* Weir Rebuttal Decl. ¶ 9.

Lemon Dep. at 37:21-38:6. Nor has Dr. Lemon ever been hired as a consultant outside the litigation context in relation to a conjoint analysis:



Lemon Dep. at 39:21-40:2.

Despite his teaching experience at both Northeastern University and Vassar University, Dr. Lemon has never taught a class on conjoint analysis:



Lemon Dep. at 37:14-20.

To summarize, Dr. Lemon critiques Plaintiff's use of conjoint analysis to calculate Overpayment Damages – a widely accepted methodology both in and out of the litigation context – despite that: (1) he has never designed or administered a conjoint survey himself, (2) he has never authored a single paper on either conjoint analysis or survey research methodology, (3) he has never been hired as a consultant outside the litigation context in relation to a conjoint analysis, and (4) he has never taught any classes in the field of survey research methodology. Dr. Lemon is not qualified to testify about Plaintiff's conjoint analysis methodology.

## III. DR. LEMON'S TESTIMONY IS NOT THE RESULT OF RELIABLE METHODS

Dr. Lemon criticizes Mr. Gaskin's survey by arguing that it   Lemon Report ¶ 109. This is incorrect. There were two readily available methods for measuring and testing the veracity of the responses, but Dr. Lemon uses neither method in his own report.

6

First, as explained by Mr. Gaskin in his rebuttal report, Mr. Gaskin conducted a "holdout analysis" to measure the accuracy of his survey.[3] Dr. Lemon did not replicate this analysis, or attempt one of his own:



Lemon Dep. at 121:11-19. Similarly, Dr. Lemon failed to analyze the "root likelihood" statistics – another method of measuring how well a choice model fits a data set – from the Gaskin survey:



Lemon Dep. at 120:17-19. Thus, while Dr. Lemon's report critiques the accuracy of Mr. Gaskin's survey, he does so without even attempting to utilize two readily-available and well-established tools.

Additionally, despite criticizing Mr. Gaskin for his use of the phrase "<u>Susceptible</u> to drop fires" (*i.e.*, the alleged Defect in this matter),[4] Dr. Lemon does no analysis to support or explain why (he argues) such terminology would cause the opinions of Mr. Weir or Mr. Gaskin to be unreliable:



---

[3] *See* Gaskin Rebuttal ¶ 18 ("In ¶ 48 and Exhibit J of my report, I discuss the holdout analysis I conducted, in which I use the partworths of respondents to predict the choices they made in the tradeoff exercises. The hit rate observed was within the expected and acceptable range, and indicate that my model results are appropriate to use when making the market value comparison calculations in my Report.").
[4] Lemon Report ¶ 112.

Lemon Dep. at 96:5-10.

Further, Dr. Lemon criticizes Plaintiff's survey and analysis for not accounting for supply-side factors.  *See* Lemon Report ¶ 91 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Dr. Lemon is wrong; Plaintiff's expert reports and rebuttal reports explain precisely how supply-side marketplace factors have been accounted for.  *See* Weir Decl. ¶¶ 30-46; Gaskin Report ¶ 20; Weir Rebuttal Decl. ¶¶ 14-23.

In summary, Dr. Lemon's report contains a clear pattern: Dr. Lemon advances broad critiques of Plaintiff's experts' work, but he neglects to do any of his own original survey work to test such critiques.  *See* Lemon Dep. at 104:15-19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  This falls short of the reliability standards under Rule 702 – Dr. Lemon's critiques cannot be limited to his own *ipse dixit*, and they are not the product of reliable principles and methods because he neglected to do any empirical analysis of his own.

## IV.  DR. LEMON DID NOT ATTEMPT TO CALCULATE OVERPAYMENT DAMAGES

### A.  Legal Standard

With regard to damages specifically, "[t]he first step in a damages study is the translation of the legal theory of the harmful event into an analysis of the economic impact of that event." Federal Judicial Center, REFERENCE MANUAL ON SCIENTIFIC EVIDENCE at 432 (3d ed. 2011).  "In most cases, the analysis considers the difference between the plaintiff's economic position if the harmful act had not occurred and the plaintiff's actual position."  *Id.*  A proper damages analysis must consider what the economic situation would have been "absent the wrongdoing," a situation

often referred to as "the but-for scenario." Federal Judicial Center, REFERENCE MANUAL ON SCIENTIFIC EVIDENCE at 432 (3d ed. 2011). The *Reference Manual* explains:

> Because the but-for scenario differs from what actually happened only with respect to the harmful act, damages measured in this way isolate the loss of value caused by the harmful act and exclude any change in the plaintiff's value arising from other sources.

*Id.*

For an overpayment analysis to comply with the principles set forth in the *Reference Manual* it must control for extraneous variables that might influence price in order to isolate the damages due only to the allegedly misleading marketing statement or omission. *See In re Dial Complete Mktg. & Sales Pracs. Litig.*, 320 F.R.D. 326, 337 (D.N.H. 2017) ("Because plaintiffs' damages calculation appears capable of reliably isolating the pertinent price premium and establishing the full extent of damages on a class-wide basis, in a manner consistent with plaintiffs' theories of liability, the model satisfies the demands of *Comcast* and Rule 23.").

Here, the harmful act was that Defendant manufactured, distributed, and sold its P320s with a material design defect (the "Defect") where, due to the Defect, the P320 pistols "can inadvertently discharge a round of ammunition if dropped on the ground (a 'drop fire') … render[ing] the weapon unreasonably dangerous for its intended uses."[5] As such, the issue is whether Plaintiff and class members overpaid for their SIG P320 Pistols because of the presence of the Drop Fire Defect. Gaskin Report ¶ 8; Weir Decl. ¶¶ 5-7. To address that question, an economic analysis must be "appropriately designed to measure the true reduction in economic value at the point of purchase solely attributable to the Defect." Weir Decl. ¶ 33. That is, the but-for scenario must be one in which the Drop Fire Defect is either present or not, and

---

[5] *See* Class Action Complaint ¶ 1.

9

everything else is held equal, so as to isolate the effect of the Defect on the value of the P320 pistol.

**B.      Dr. Lemon Did Nothing To Calculate Overpayment Damages**

Dr. Lemon spends the bulk of his report criticizing the conjoint survey work and analysis underlying the Overpayment Damages calculations of Plaintiff's experts. But Dr. Lemon did not conduct any survey of his own, conjoint or otherwise. Nor did he do any Overpayment Damage calculation of his own whatsoever.



Lemon Dep. at 66:4-9.

The critical issue in this case – which Plaintiff's experts were retained to assess, and what Dr. Lemon was retained to critique – was whether Overpayment Damages exist, and if so, to what extent. But Dr. Lemon made no attempt to determine whether Overpayment Damages associated with either SIG Sauer's non-disclosure of the Defect or representations regarding the safety of the Pistol existed, and if so, to what extent. Instead, Dr. Lemon only claims to have read articles relating to the marketplace, which is not an empirical analysis:



Lemon Dep. at 103:17-24.

## V.   DR. LEMON FAILED TO ADDRESS ONE OF PLAINTIFF'S THEORIES OF LIABILITY

Dr. Lemon failed to address Plaintiff's theory of liability regarding the P320's design defect that stands independent from SIG's affirmative misrepresentations of "drop safe[ty]." *See*, *e.g.*, Compl. ¶¶ 1, 41, 86.  One aspect of Plaintiff's theory of liability is that SIG had a duty to disclose that the P320 suffered from a dangerous drop fire design defect.  Compl. ¶¶ 41, 86.  For example, Plaintiff alleges claims for relief for breach of the implied warranty of merchantability and for fraudulent concealment.  Indeed, Dr. Lemon expressly recognizes these allegations in his report, citing to the Complaint at paragraphs 41 and 86.  Lemon Report ¶¶ 48-49.  However, when asked at deposition if he addressed Plaintiff's theory of liability resulting solely from the existence of the alleged design defect separate from any alleged misrepresentations, Dr. Lemon could not cite a single paragraph in his report where he had done so.  Lemon Dep. at 60:23-61:17; 66:10-70:20.  As a result, Dr. Lemon's testimony should be excluded at least as to this portion of Plaintiff's theory of liability.

## CONCLUSION

Dr. Lemon, despite purporting to be an expert economist, is not qualified to opine on the Plaintiff's conjoint analysis methodology and survey techniques.  Moreover, he did not attempt to isolate the effect of the alleged Defect or calculate Overpayment Damages.  He did not conduct his own survey, and he did not employ reliable methods in making his purported criticisms of Mr. Weir and Mr. Gaskin.  Moreover, Dr. Lemon failed to address Plaintiff's theory of liability alleging damages separate from SIG's affirmative misrepresentations.  Therefore, Dr. Lemon should be precluded from offering any opinions on the existence or amount of the alleged Overpayment Damages associated with the Defect.

Dated: October 13, 2021                             Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   */s/ Joseph I. Marchese*
         Joseph I. Marchese

**BURSOR & FISHER, P.A.**
Joseph I. Marchese (*pro hac vice*)
NY State Bar No. 4238317
Joshua D. Arisohn (*pro hac vice*)
NY State Bar No. 4495198
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: jmarchese@bursor.com
            jarisohn@bursor.com

**BURSOR & FISHER, P.A.**
Neal J. Deckant (*pro hac vice*)
CA State Bar No. 322946
NY State Bar No. 5026208
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ndeckant@bursor.com

**DOUGLAS, LEONARD & GARVEY, P.C.**
Charles G. Douglas, III
NH Bar #669
Benjamin T. King
NH Bar #12888
14 South Street, Suite 5
Concord, NH 03301
Telephone: (603) 224-1988
E-Mail:  chuck@nhlawoffice.com
             benjamin@nhlawoffice.com

12